*JUDGE BATTS*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

/

1524948 ALBERTA LTD., an Alberta, Canada
corporation d/b/a Terra Marketing Group,

Plaintiff,

vs.

QUIBIDS, LLC, an Oklahoma limited liability
company,

and

MATT BECKHAM, an individual,

and

INTERMARK COMMUNICATIONS, INC.
d/b/a COPEAC, a New York corporation,

Defendants.

/



1:10-cv-05686-DAB-ECF CASE

COMPLAINT FOR FALSE
ADVERTISING, DEFAMATION,
COPYRIGHT INFRINGEMENT,
AND INJUNCTIVE AND
DECLARATORY RELIEF



JUL 27 2010

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff 1524948 ALBERTA LTD. d/b/a Terra Marketing Group ("Terra Marketing" or

"Plaintiff"), through its attorneys, alleges this Complaint as follows:

### Introduction

1.     This action arises out of the theft and subsequent wrongful and illegal use of

Plaintiff's trademarks, copyrighted creative materials, and website elements owned by Plaintiff,

by Defendants QuiBids, LLC and its president Matt Beckham (collectedly, "Defendants"), and

those Defendants' national campaign of false advertising involving completely fabricated news

stories, fake customer testimonials and the wrongful misappropriation of the image of a French

television news anchor.   Defendant Intermark Communications, Inc. d/b/a COPEAC ("COPEAC" and not included in the definition of "Defendants") is included in this action because the injunctive and declaratory relief sought by Plaintiff will affect COPEAC as well.

## Jurisdiction

2.      This Court has subject matter jurisdiction over the federal claims (Claims II and III) under 28 U.S.C. §1331 and 28 U.S.C. §1338(a).  This Court has supplemental jurisdiction over the New York common law claim (Claim I) and the declaratory relief claim (Claim IV) under 28 U.S.C. §1367.

3.      This Court has personal jurisdiction over Defendant QUIBIDS LLC ("QuiBids") because, pursuant to New York's Long Arm Statute, N.Y. Civ. Prac. L.&R. §302, all claims for relief in this action arise from the following acts of QuiBids, which occurred in New York:

   a.   QuiBids owns, operates, and controls certain interactive websites and online fora that directly solicit content and commerce from New York residents about New York businesses and vendors in online auctions.  The websites and fora enable users to participate in, and post content about, online auctions and other commercial activities from locations in New York and about businesses and vendors located in New York;

   b.   QuiBids has transacted business within the state of New York and contracted with COPEAC to supply online auction services within the state of New York and to residents of New York, and has derived substantial revenue from services rendered in New York;

   c.   On information and belief, the contract between QuiBids and COPEAC contains a provision where QuiBids submitted to the exclusive jurisdiction of courts in New York for "all matters in connection with"  the contract; and

    d. QuiBids has committed tortious acts within the state of New York causing injury to persons and property within New York, and expected or should reasonably have expected that its acts would have consequences in New York, and has derived and continues to derive substantial revenue from the interstate or international commerce as a result of its acts.

4.    This Court has personal jurisdiction over Defendant MATT BECKHAM because, pursuant to New York's Long Arm Statute, N.Y. Civ. Prac. L.&R. §302, all claims for relief in this action arise from the following acts of Beckham's acts:

    a. Through his activities as the president or other principal of QuiBids, and/or acting on his own behalf as an individual, Beckham owns, operates, and controls certain interactive websites and online fora that directly solicit content and commerce from New York residents about New York businesses and vendors in online auctions.  The websites and fora enable users to participate in, and post content about, online auctions and other commercial activities from locations in New York and about businesses and vendors located in New York;

    b. Through his activities as the president or other principal of QuiBids, and/or acting on his own behalf as an individual, Beckham has transacted business within the state of New York and contracted with COPEAC to supply online auction services within the state of New York and to residents of New York, and has derived substantial revenue from services rendered in New York; on information and belief, the contract between QuiBids and COPEAC contains a provision where QuiBids submitted to the exclusive jurisdiction of courts in New York for "all matters in connection with" the contract; and

c.  Through his activities as the president or other principal of QuiBids, and/or acting on his own behalf as an individual, Beckham has committed tortious acts within the state of New York causing injury to persons and property within New York, and expected or should reasonably have expected that his acts would have consequences in New York, and has derived and continues to derive substantial revenue from the interstate or international commerce as a result of his acts.

5.     This Court has personal jurisdiction over Defendant INTERMARK COMMUNICATIONS, INC. d/b/a COPEAC ("COPEAC") because COPEAC is a New York corporation which transacts substantial business within this State and District, and because COPEAC submitted to the jurisdiction of this Court in an agreement it entered into with Plaintiff, as alleged further herein, and, upon information and belief, in an agreement it entered into with QuiBids and/or Beckham.

## <u>Venue</u>

6.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because a substantial part of the events giving rise to the claims asserted herein occurred in and are causing injury in the District, including:

a.  Defendant COPEAC agreed to venue in this District in an agreement it entered into with Plaintiff, as alleged further herein.

b.  The websites created and maintained by Defendants QuiBids and Beckham, which include false and defamatory statements about Plaintiff, are accessible in this District and were directed at consumers located in this District;

c.  Plaintiff has experienced injury in the District and the harm suffered by Plaintiff was felt primarily in this District as a result of Defendants' QuiBids' and Beckham's

misconduct, including that QuiBids and Beckham entered into transactions with residents of this District due to the false and defamatory statements made by those Defendants; and

d.  On information and belief, the contract between QuiBids and COPEAC contains a choice of forum clause where QuiBids agreed to venue in New York for "all matters in connection with" the contract.

**Plaintiff 1524948 Alberta Ltd. d/b/a Terra Marketing Group**

7.     Plaintiff 1524948 ALBERTA LTD., an Alberta, Canada corporation d/b/a Terra Marketing Group ("Terra Marketing") is a corporation organized and existing under the laws of the Province of Alberta, Canada, and maintains an office in Calgary, Alberta, Canada.  Terra Marketing is the creator and owner of the website SwipeBids.com, an online auction website.

**Defendant QuiBids, LLC**

8.     On information and belief, Defendant QUIBIDS, LLC ("QuiBids") is a limited liability corporation organized and existing under the laws of the State of Oklahoma, and maintains its principal place of business in Oklahoma City, Oklahoma.  QuiBids is the registrant and owner of the domain names QuiBids.com and ConsumerTipsDigest.org.   Upon information and belief, QuiBids is also the creator, owner, administrator, and/or other party responsible for the creation and/or maintenance of a Facebook group entitled "Swipebids.com-is-a-Bloody-SCAM," in which group defamatory statements, discussions, and other postings regarding SwipeBids.com have been posted.

9.     QuiBids has purposefully availed itself of the benefits of conducting business in New York.  QuiBids owns and operates the above websites, which actively encourage New York residents to post information about businesses and online business activities located in and

conducted from New York, as well as participate in online auctions and other business activities and discussions from New York locations.

### Defendant Matt Beckham

10.     Defendant Matt Beckham ("Beckham"), on information and belief, founded, owns and controls QuiBids and the above websites.  On information and belief, Beckham oversees the day-to-day operations of QuiBids and the websites.

11.     Beckham has purposefully availed himself of the benefits of conducting business in New York, on behalf of QuiBids.  Beckham controls and operates QuiBids.com and ConsumerTipsDigest.org, which actively encourage New York residents to post information about businesses and online business activities located in and conducted from New York, as well as participate in online auctions and other business activities from New York locations.

### Defendant Intermark Communications, Inc. d/b/a COPEAC

12.     Defendant Intermark Communications, Inc. d/b/a COPEAC is a corporation organized and existing under the laws of the State of New York, and maintains its principal place of business in Woodbury, New York.  COPEAC is an "affiliate network," which contracts with online vendors and marketing companies such as Terra Marketing, and QuiBids, to place advertisements and other promotional media with "affiliates," who in turn place those advertisements and media with websites and other online media for inclusion on websites, in email promotions, and via other marketing content directed at consumers.

### DOE Defendants

13.     This Complaint shall be amended to substitute names of individual or business entities for "Does" in due course, upon the identification of additional defendants through discovery.

**Terra Marketing's Business and Marks**

14.     Terra Marketing is the owner and operator of a website called SwipeBids.com ("SwipeBids") which is an online auction facility that allows users to register and participate in auctions for consumer goods at typically substantial discounts from ordinary retail prices.  Terra Marketing has operated SwipeBids continuously since December 2009.   To market the SwipeBids.com online auction site, Terra Marketing has invested heavily in its service mark SwipeBids (the "Mark").  Terra Marketing has continuously used and conducted business under the Mark in interstate and international commerce since December 2009, and has advertised in connection with the Mark throughout the country and the world, principally through advertising on the Internet.

15.     Through Terra Marketing's continuous and exclusive use of the Mark, the Mark has acquired secondary meaning and goodwill as consumers have come to associate the Mark with Terra Marketing and its services.

16.     Since Terra Marketing began using the Mark, Terra Marketing's services sold in connection with the Mark have generated millions of dollars in revenue.  Terra Marketing has devoted and continues to devote considerable time, effort, and money in promoting and marketing its services offered in connection with the Mark.

17.     Terra Marketing has filed an application with the United States Patent and Trademark Office for the registration of the Mark.  As of the filing of this Complaint, that application was still pending.

**QuiBids' and Beckham's Wrongful Acts and Conduct**

18.     Defendants have engaged in a variety of wrongful misconduct.  First, Defendants signed up as an "affiliate publisher" with COPEAC, which is an advertising vendor of Plaintiff. Defendants used this special access through COPEAC in order to steal copyrighted material from

Plaintiff.   Thereafter, Defendants created virtually identical copies of Plaintiff's copyrighted materials and used them as the primary marketing materials for Defendants, generating hundreds of thousands if not millions of dollars from such stolen copyrighted materials.   Defendants committed these acts over and over again for a number of months without Plaintiff becoming aware of them until shortly before the filing of this Complaint.  Copies of Plaintiff's copyrighted materials in side-by-side comparison with those copies created therefrom by Defendants are attached hereto for the sake of illustration as Exhibit A.

19.     Second, Defendants have engaged in a sophisticated campaign of false advertising using a variety of methods.  Defendants have and currently are marketing their product through the use of a fake blog that purports to be a consumer protection/awareness blog created by an investigative reporter; however, the blog is, on information and belief, entirely fake and a mere shill site for Defendants.   The creation, maintenance, and operation of such fake blogs are hallmarks of fraudulent marketing.   Defendants have routinely engaged in those activities; conversely, Plaintiff has never owned, operated, or created any fake blogs.  As with Defendants' misappropriation of Plaintiff's intellectual property, Defendants' false advertising continued for months before Plaintiff became aware of it.

20.     Defendants have also engaged in a massive national advertising campaign using advertisements containing Mélissa Theuriau, a news anchor from a prominent French television station, who is portrayed by Defendants in the advertisements as having "investigated" and approved or sponsored Defendants' products.  On information and belief, these statements are false, and Defendants do not have permission to use Ms. Theuriau's image.

//

//

### A. **Theft of Copyrighted Materials and Infringement**

21.    Plaintiff has invested heavily into the development of its sales materials for its product, and the graphics, wording and other elements of it sales pages have been thoroughly tested, at great expense, to determine the optimal version to maximize the conversion of users to paying customers.  Plaintiff uses multiple affiliate marketing advertising networks to sell its product.  When an advertiser, such as Plaintiff, engages an advertising network, it places links with the advertising network to sales materials and landing pages that are not publically available other than to customers who are targets of the marketing.  The advertising networks have hundreds and often thousands of independent "affiliate publishers" who will use the advertiser's marketing materials to promote the advertiser, and the advertiser pays the affiliate network for all sales resulting for such marketing.  The advertising network takes a commission on the sale, and passes the balance on to the affiliate publisher.  The identities of affiliate publishers are strictly confidential; otherwise, advertisers could circumvent the advertising networks and contract directly with affiliate publishers.

22.    In this matter, Defendants entered a contract with advertising network COPEAC for the general purpose of being an "affiliate publisher" for COPEAC and for the specific purpose of identifying and stealing Plaintiff's valuable copyrighted marketing materials.  Upon signing contracting with COPEAC, Defendants were given COPEAC Affiliate ID 20578.  Thereafter, Defendants, due to their access as an affiliate publisher of COPEAC, identified and stole graphics belonging to SwipeBids by making copies of Plaintiff's key sales pages, which are protected by a registered copyright.

23.    On information and belief, Defendants, despite that fact that they are direct competitors with Plaintiff, proceeded to promote Plaintiff's product, SwipeBids.com, with a fake

blog created by Defendants, which included fake customer testimonials, fake user comments and the unauthorized use of photographs of people whom Defendants purport to be news reporters. As a result of Defendants' promotion of Plaintiff's products, at least 1469 clicks and 54 sales were generated.  This misconduct not only was in violation of Defendants' contract with COPEAC, which prohibits the use of their system for unlawful reasons, but the misconduct was, at its core, highly deceptive and fraudulent marketing that violated a variety of state and federal laws, subjecting Plaintiff to potential liability to third parties.

24.   As shown in Exhibit A and in other instances, Defendants also used the copyrighted materials stolen from Plaintiff to create substantially similar or virtually identical marketing materials for Defendants' own product at QuiBids.com.  Importantly, Plaintiff's testing of its marketing materials has demonstrated to Plaintiff that certain wording and certain placement of offer points and graphics lead to significantly greater sales than alternative wording and placement.  As sophisticated affiliate marketers and competitors in the same industry as Plaintiff, Defendants are well aware of how specific wording and placement of media within advertising can make the difference between profitable and unprofitable advertising campaigns. With this knowledge, Defendants proceeded to copy all of the key sales materials and use such materials in its marketing for its products.  This use was unauthorized, without privilege and unlawful.

### B.  False Advertising by Defendants QuiBids.com and Matt Beckham

25.   Defendants engaged, and continue to engage, in a significant amount of marketing that is not just false but virtually completely fabricated.  As background, Defendant Beckham has a long history before his work with Defendant QuiBids in promoting products with fabricated, or "fake," blogs, in the realm of acai berry products and other weight loss products.  For example,

he, on information and belief, created the fake blogs that were formerly located at <shirleysdietjournal.com> and <abbysdietjournal.com> to promote weight loss products, and these, and his other blogs, were complete fabrications, containing fake names, fake testimonials, fake user comments and using photographs of people without authorization (or using stock photography and passing it off as the fake person created in the blog).  Defendant Beckham used these same unlawful techniques to create the marketing materials for Defendant QuiBids.

26.     Specifically, Defendants, in their marketing materials, have used two photographs of women claiming that they are news reporters reporting, or who have reported, about the QuiBids product and its supposed success.  The use of both pictures is highly deceptive.  First, Defendants use a picture of a woman appearing to be a reporter on a newsroom set, with the word, "Featured," above her head, and the words, "Investigating QuiBids.com – A new auction site on the web," next to the photograph.  The photograph and the words clearly convey the idea that she a real news reporter, working for an actual news outlet, who has investigated and/or reported about the QuiBids product.



27.     However, this is false.  In fact, the photograph is of a French journalist and anchor for the French channel M6, Mélissa Theuriau, who, on information and belief, has never reported on QuiBids, nor has she ever mentioned QuiBids in any sort of media, video, print, web or otherwise.  On information and belief, Defendants stole this photograph from this web page, containing many photographs of Ms. Theuriau, including the one stolen by Defendants:

http://www.yousaytoo.com/Anwar/the-worst-most-beautiful-news-reporter/8845.   The   actual

photograph that was stolen and manipulated appears as follows:



28.   The second deceptive use of a photograph of a purported female reporter involves

a picture of a woman holding a microphone with the caption, "Julie's our Consumer Tips

Investigator Reporting on New Shopping Trends."   The photograph and caption clearly convey

the message that there is a reporter who works for the website "Consumer Tips Digest" named

Julie, and that she, an investigative reporter, is involved in the publication of a purported

consumer protection/consumer awareness website.   This is all false.   The photograph is a stock

photograph licensed from the website, www.istockphoto.com, and, on information and belief, her name is not Julie, and she does not work for the "Consumer Tips Digest" website. Below are the photo from Defendants' website and a photo from the stock photography website.





29.     In addition to making false statements about real news reporters "investigating" or "reporting" on QuiBids, Defendants filled their fake blogs with fake testimonials and fake user comments.     Comparing     Defendants'     two     fake     blog     websites     at http://www.consumertipsdigest.org/penny_auctions/vt/index.php     and     at http://www.consumertipsdigest.org/penny_auctions/as/index2.php, it is clear that Defendants fabricated customer testimonials and user comments, based on how Defendants changed the customer names and photographs, as well as changed the user names in the user comments sections, for each of their two fake blogs.  Thus, it is clear that certain customer testimonials and user comments are fabricated; further, on information and belief, other testimonials and user comments --perhaps all of them—are fake.

| http://www.consumertipsdigest.org/penny_auctions/vt/index.php | http://www.consumertipsdigest.org/penny_auctions/as/index2.php |
|---|---|
| (Note the time elapsed since posting does | |

| | |
|---|---|
| not change, despite the implication that the posts are fresh and posted the same day as viewing) | |
| By **Kellie Hawkins** *posted 8 hr(s) 53 minutes ago*<br><br>What determines when an auction ends? It seems like the timer is reset back to 10 seconds as people continue to bid, then suddenly the auction is over and the item is SOLD even though people are still bidding, right!? So, at some point, does the auction just end regardless of whether bids are still be entered? Thanks.<br><br>By **Jill@QuiBids** *posted 8 hr(s) 22 minutes ago*<br><br>The timer is reset each time a person bids, therefore, an auction ends when no one else bids. It never ends when people are still bidding. We want everyone to have a fair chance. | Sissydad says: Thu Jul 08, 2010 9:50 AM<br><br>What determines when an auction ends? It seems like the timer is reset back to 10 seconds as people continue to bid, then suddenly the auction is over and the item is SOLD even though people are still bidding, right!? So, at some point, does the auction just end regardless of whether bids are still be entered? Thanks.<br><br>Jill@QuiBids says: Thu Jul 08, 2010 6:33 PM<br><br>The timer is reset each time a person bids, therefore, an auction ends when no one else bids. It never ends when people are still bidding. We want everyone to have a fair chance. |
| By **Alexandra Thurber** *posted 7 hr(s) 1 minute ago*<br><br>Thanks for the info. I just got registered and I already won my first auction!<br><br>By **Jill@QuiBids** *posted 6 hr(s) 24 minutes ago*<br>Congratulations! Isn't winning fun?! | Mikey says: Thu Jul 08, 2010 8:54 PM<br><br><br>Thanks for the info. I just got registered and I already won my first auction!<br><br>Jill@QuiBids says: Sat Jul 10, 2010 2:24 PM<br>Congratulations! Isn't winning fun?! |
| By **Abigail Wright** *posted 6 hr(s) 11 minutes ago*<br>are the items we purchase brand new? open box items? refurbished items? If defective, can they be returned to the manufacturer under warranty?<br><br>By **Jill@QuiBids** *posted 5 hr(s) 1 minute ago*<br><br>All products we purchase should be new and factory sealed. If you ever get a defective item, let us know immediately and we'll work out the issue - new product or a refund. | Cathy says: Sat Jul 10, 2010 3:16 PM<br><br>are the items we purchase brand new? open box items? refurbished items? If defective, can they be returned to the manufacturer under warranty?<br><br>Jill@QuiBids says: Sat Jul 10, 2010 6:05 PM<br><br>All products we purchase should be new and factory sealed. If you ever get a defective item, let us know immediately and we'll work out the issue - new product or a refund. |

| By James *posted 1 hr(s) 17 minutes ago* | A.C. says: Fri Jul 16, 2010 12:08 PM |
|---|---|
| So, if I bid when the timer says 08 seconds left, and no one else bids before the timer reaches 00, then I win the bid? I mean there is no minimum number of seconds for your bid to be listed before the biding ends? | So, if I bid when the timer says 08 seconds left, and no one else bids before the timer reaches 00, then I win the bid? I mean there is no minimum number of seconds for your bid to be listed before the biding ends? |
| By Jill@QuiBids *posted 1 hr(s) 17 minutes ago* | Jill@QuiBids says: Sat Jul 17, 2010 12:13 PM |
| If you bid and no one else does, then yes, you've won the auction. Everyone has the same/fair chance to bid. So if they all just choose to not bid, then that works in your favor. | If you bid and no one else does, then yes, you've won the auction. Everyone has the same/fair chance to bid. So if they all just choose to not bid, then that works in your favor. |

 Blake talks about all the deals he's found on QuiBids.com



"Like many others I was skeptical at first too, but after I decided to start bidding, I soon started winning. When the first item I won finally came in the mail within two days of winning it, I was hooked!! Not only does QuiBids have cool stuff, but it's actually FUN to bid too. I continued my "QuiBids journey" and ended up winning this awesome Olympus Tough 8000 camera. Did I mention it's WATERPROOF? It's awesome! Thanks QuiBids!"
-*Shaun / Virginia*

30.     Interestingly, Defendants have stated to the public that, "All our testimonials are real people who use and received their products from us [QuiBids]." (Posted on complaintsboard.com by admitted employee of QuiBids).  This is itself another instance of false advertising because, as stated and illustrated above, it is clear that Defendants have fabricated customer testimonials and user comments in their marketing.

31.     Defendants did not limit their false advertising to fake blogs.  In fact, Defendants have flooded the Internet with numerous versions of advertisements that fraudulently feature

Mélissa Theuriau.  As with the use of Ms. Theuriau's image on Defendants' fake blog websites, it is highly doubtful that Ms. Theuriau has any idea that her image has been hijacked by Defendants and used to hawk laptops, iPads, cameras and many other products on advertisements being run on hundreds if not thousands of websites all over the Internet.  Some of examples of just two of the many versions of Defendants' fraudulent advertising are below:





32.     In addition to Defendants' fake blogs and fraudulent use of Ms. Theuriau's image in a nationwide advertising campaign, Defendants have also made many false statements about

Plaintiff.  Defendants, on information and belief, have created, themselves and in conjunction with agents of Defendants, a page on the social networking website, Facebook.com, entitled, "Swipebidscom-is-a-Bloody-SCAM."  This page asserts that Plaintiff is a "fraudulent company" that takes money from customers' bank accounts without proper authorization.  Defendants have also, on information and belief, stated to the public, "[S]wipebids actually steals content off Quibids all the time" (posted on complaintsboard.com by agent of Quibids), and "[t]hey [Swipebids] have blatantly stolen our promoters, our own testimonials, TV news piece, etc. to benefit themselves," (posted on associatedcontent.com by admitted employee of QuiBids). These statements are false, defamatory and have inflicted damage on Plaintiff.

### General Allegations as to Copyright Claims

33.   "SwipeBids.com" and the creative elements thereof fall within the category of "pictorial, graphic and sculptural works" as defined in 17 U.S.C. §101 and are an original work of authorship subject to copyright protection pursuant to 17 U.S.C. §102(a)(5).

34.   Plaintiff is the author of the "SwipeBids.com" website and the elements thereof and is the owner of the copyright therein pursuant to 17 U.S.C. §201.

35.   On the date of first publication of the "SwipeBids.com" website and the elements thereof, Plaintiff was a national and domiciliary of a treaty party (to wit: Canada) and thus "SwipeBids.com" is subject to copyright protection pursuant to 17 U.S.C. §104(b).

36.   As the owner of the copyright in "SwipeBids.com," Plaintiff has the exclusive rights provided in 17 U.S.C. §106, which include but are not limited to the right to reproduce the copyrighted work, the right to distribute copies of the copyrighted work to the public, the right to prepare derivative works based upon the copyrighted work, and the right to display the copyrighted work publicly.

37.     In addition and pursuant to 17 U.S.C. §113, Plaintiff has the exclusive right to reproduce "SwipeBids.com" in or on any kind of article, whether useful or otherwise.

38.     On July 6, 2010, Plaintiff submitted to the Copyright Office the required application and fee for the registration of its copyright in "SwipeBids.com."  Accordingly, under 17 U.S.C. §410(d), the effective date of the copyright registration is July 6, 2010.

## Count I

## Copyright Infringement

### (Against QuiBids and Beckham for All Purposes, and Against COPEAC as to Injunctive Relief Only)

39.     Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 38 as though fully rewritten herein.

40.     The actions of QuiBids and Beckham as alleged herein have violated and continue to violate Plaintiff's exclusive rights, including the rights to copy, reproduce, distribute and display publicly its original work of the SwipeBids website and the creative elements and design thereof.

41.     In addition to having personally committed acts of infringement against Plaintiff as alleged herein, Beckham enjoys and enjoyed a direct financial benefit from QuiBids' infringing activity.  Beckham has and had the right and ability to supervise the infringing activity of QuiBids by virtue of his position and duties as an employee, officer, or other principal of QuiBids.  In addition, Beckham personally participated in the infringing activity, in coordination with other unknown persons, by creating, operating, and maintaining the websites on which the infringing materials were used in advertisements and through which transactions that resulted from those infringing advertisements were processed.

18

42.     The actions of QuiBids and Beckham as alleged herein constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act, 17 U.S.C. §101 et seq.

43.     The infringing acts of QuiBids and Beckham as alleged herein have been willful, intentional and in disregard of and with indifference to the rights of Plaintiff.

44.     The infringing acts of QuiBids and Beckham are ongoing and will continue unless said defendants are enjoined and restrained from continuing such conduct.  Plaintiff has no adequate remedy at law to prevent the ongoing and continuous infringement of its exclusive rights by QuiBids and Beckham, and is otherwise statutorily entitled to injunctive relief to prevent such infringement.

45.     Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief to prohibit, enjoin and restrain QuiBids and Beckham from further infringing its copyright and to an order against QuiBids and Beckham, and as to all persons acting on their behalf and/or under their direction (including but not limited to COPEAC) requiring the impoundment, destruction, erasure, and takedown of any and all copies of the elements of SwipeBids.com and/or any website or other online material derived therefrom and/or containing or using infringing materials in violation of Plaintiff's exclusive rights, and requiring the cessation and prevention of all means by which such infringement may be conducted (including but not limited to QuiBids' affiliate account with COPEAC).

46.     Pursuant to 17 U.S.C. §§504 and 505, Plaintiff is entitled to an award against QuiBids and Beckham of Plaintiff's actual damages and the profits of QuiBids and Beckham, as well as its court costs.

//

//

**Count II**

**Trade Libel under Section 43(a) of the Lanham Act**
**(Against QuiBids Only)**

47.     Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 46 above as though fully rewritten herein.

48.     The statements and representations made by QuiBids of and concerning Plaintiff included, but were not limited to, advertising, publishing, disseminating and communicating false and misleading statements and unfounded misrepresentations about the business, goodwill, and reputation of Plaintiff.

49.     The aforementioned false statements and representations of and concerning Plaintiff were published, disseminated, or otherwise communicated by QuiBids.

50.     The aforementioned false statements and representations made by QuiBids of and concerning Plaintiff were published, disseminated, or otherwise communicated by QuiBids across state and national borders and in interstate and international commerce.

51.     The aforementioned false statements and representations made by QuiBids of and concerning Plaintiff were statements and representations of a commercial nature and constituted commercial speech since they were published, disseminated, or otherwise communicated with the intent of increasing QuiBids' sales and/or decreasing Plaintiff's sales.

52.     As a direct and proximate result of QuiBids' conduct as alleged herein, Plaintiff is entitled to recover damages from QuiBids in an amount to be determined at trial.


//

//

//

**Count III**

**False Advertising under Section 43(a) of the Lanham Act**
**(Against QuiBids Only)**

53.     Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 52 above as though fully rewritten herein.

54.     The aforementioned false statements and representations of and concerning Plaintiff and QuiBids were published, disseminated, or otherwise communicated by QuiBids about QuiBids' and Plaintiff's goods, services, and/or commercial activity.

55.     The aforementioned false statements and representations deceive, or have the potential to deceive, a substantial portion of their targeted audience.

56.     The deception caused by the aforementioned false statements and representations is likely to affect the purchasing decisions of the audience to which those false statements and representations were directed.

57.     The aforementioned false statements and representations, and the advertising materials in which they were used, involve goods or services in interstate and international commerce.

58.     The deception caused by the aforementioned false statements and representations resulted in, or is likely to result in, injury to Plaintiff.

59.     As a direct and proximate result of QuiBids' conduct as alleged herein, Plaintiff is entitled to recover damages from QuiBids in an amount to be determined at trial.

**Count IV**

**Common Law Defamation**
**(Against QuiBids and Beckham Only)**

60.     Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 59 above as though fully rewritten herein.

21

61.     QuiBids and Beckham have made false statements regarding Plaintiff, identified in detail in the above paragraphs 25 through 32.

62.     All of these statements are false, and QuiBids and Beckham knew or should have known they were false when they published them as alleged herein.

63.     QuiBids' and Beckham's statements constitute defamation per se, in that they defame Plaintiff in its trade.

64.     QuiBids and Beckham published these statements without any privilege to do so.

65.     As a proximate result of the foregoing acts, QuiBids and Beckham have caused actual harm to Plaintiff, and Plaintiff has been damaged and will continue to be damaged.

**Count V**

**Declaratory Relief**
**(Against QuiBids and Beckham Only)**

66.     Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 65 as though fully rewritten herein.

67.     An actual controversy has arisen and exists between Plaintiff on the one hand and Defendants on the other about their respective rights and duties.  Defendant QuiBids contends, among other things, that Plaintiff infringed upon Defendant QuiBids' trademarks and/or other rights due to Plaintiff's use of a clip of a news video about the penny auction industry generally.  Defendant QuiBids also contends that Plaintiff's website infringes on Defendant QuiBids' trademark and trade dress.  Lastly, Defendant QuiBids has falsely attributed the marketing of a third party independent affiliate publisher of COPEAC to Plaintiff and alleged that the marketing of such affiliate is false and violative of the federal Lanham Act.  Plaintiff, in turn, contends that QuiBids infringed upon Plaintiff's copyright, trademark, trade dress, and other protected

interests, and that QuiBids committed false advertising, trade libel, and other violations of the Lanham Act, the Copyright Act, and other provisions.

68.    The respective interests of the parties will be materially affected by this action.

69.    Plaintiff desires, and is entitled to, a judicial determination under title 28, section 2201 et seq. of the United States Code of the parties' respective rights and duties, as well as a declaration to those effects.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests judgment as follows:

1.    That the Court enter judgment against Defendants QuiBids and Beckham that they have made false and misleading representations of fact in commercial advertising, in violation of 15 U.S.C. §1125(a).

2.    That the Court enter a judgment against Defendants QuiBids and Beckham that they have defamed Plaintiff in violation of New York common law.

3.    That the Court order a public retraction by Defendants QuiBids and Beckham of the published statements that defame Plaintiff, and corrective advertising as to said Defendants' false statements and misrepresentations of and concerning QuiBids and Plaintiff, all as identified herein and to be supplemented as discovered.

4.    That the Court issue injunctive relief against Defendants QuiBids and Beckham, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants (including but not limited to COPEAC), enjoining and restraining them from using in any manner the SwipeBids service mark, or other service marks of Plaintiff, alone or in combination with any other words or

symbols, or any foreign derivatives or equivalents that are likely to cause confusion, deception or mistake, on or in connection with the advertising, offering for sale, or sale of any product or service that is not Plaintiff's or not authorized by Plaintiff to be sold in connection with that service mark; further enjoining and restraining them from using false advertising of the varieties alleged herein, including but not limited to the use of fake news blogs, the use of fake testimonials, and the false and unauthorized use of photos and videos of persons such as Mélissa Theuriau in such advertisements and testimonials, as alleged herein; and further enjoining and compelling QuiBids and Beckham, and COPEAC as well, to deactivate and delete all affiliate accounts that QuiBids and/or Beckham hold with COPEAC.

5.     That the Court enter a judgment against Defendants declaring that QuiBids and Beckham have infringed upon Plaintiff's copyright and/or other rights in creative materials and/or other works relating to SwipeBids; that the interests alleged by Plaintiff to have been infringed upon by Defendants were protected by copyright or other rights and/or were infringed upon by Defendants, including in part through the use of the facilities of COPEAC; and that Plaintiff did not infringe upon any copyright or other legally protected interest of QuiBids and is not liable to QuiBids in any respect.

6.     That the Court order Defendants QuiBids and Beckham to pay Plaintiff's general, special, and actual and statutory damages as follows:

a)     Plaintiff's compensatory damages in an amount according to proof;

b)     Punitive damages in an amount to be determined, but in no case less than treble Plaintiff's damages;

c)     Plaintiff's damages and said Defendants' profits pursuant to 15 U.S.C. §1117(a);

24

d)      Such other damages as the Court shall deem to be within the provisions of the Lanham Act; and

e)      Interest, including prejudgment interest, on the foregoing sums.

7.      That the Court order Defendants QuiBids and Beckham to pay to Plaintiff both the costs of this action and the reasonable attorneys' fees incurred by it in prosecuting this action.

8.      That the Court order such other relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.


## REQUEST FOR JURY TRIAL

Plaintiff hereby demands a trial of this action by jury, on all issues so triable.

Dated: July 26, 2010

By: _____

Karl S. Kronenberger (KK 2261)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone (415) 955-1155
Facsimile (415) 955-1158
karl@KBInternetLaw.com

Attorneys for Plaintiff,
1524948 ALBERTA LTD. d/b/a Terra Marketing Group